# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. HERMAN L. NITZ, <br><br> Petitioner, <br><br> v. <br><br> JAMES G. COX, Warden, <br><br> Respondent. | No. 01 C 7699 <br><br> Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

On January 20, 1999, a man wearing a stocking cap and claiming to have a gun robbed a flower shop clerk, taking from her a purse containing two $2 bills and about $10 in coins. When Petitioner Herman L. Nitz was apprehended later that same day, the police found currency in the same denominations and a stocking cap on his person. On July 22, 1999, Petitioner entered into a negotiated plea of guilty to a single count of aggravated robbery. The state dismissed five additional counts (a second aggravated robbery count, two counts of aggravated battery, and two counts of theft)[1] and the parties agreed to a ten-year sentence. Petitioner's motion to withdraw the plea was denied and Petitioner ultimately withdrew his appeal from the denial of that motion. After unsuccessful state post-conviction petitions, Petitioner now seeks relief from this court pursuant to 28 U.S.C. § 2254. As explained below, the court concludes his claims are procedurally defaulted or lack merit.

---

[1] The court is uncertain whether the dismissed, additional counts stemmed from the same incident of January 20th, or from some other circumstances.

## PROCEDURAL HISTORY

Proceeding *pro se*, Petitioner began his collateral attack on his plea deal by filing two motions with the circuit court. The first, a December 13, 2000, petition for postconviction relief under 725 ILCS 5/122 *et. seq.*, raised three issues: Petitioner alleged that he was subject to an illegal search and arrest; that his guilty plea was involuntary because the trial judge gave him inaccurate information about his potential sentence; and that his counsel ineffectively represented him on his motion to withdraw his guilty plea because of a conflict of interest.[2] The circuit court dismissed this petition as frivolous on January 16, 2001. The second petition was filed on March 7, 2001, in the form of a motion for reduction of sentence. In this second petition, Petitioner reasserted his ineffective assistance of counsel claim, and, in addition, raised a claim under *Apprendi*; specifically, Petitioner argued that Illinois criminal code provisions that permit the court to enhance his sentence for

---

[2] Petitioner points to a response by Public Defender Stephan Baker at a hearing on a motion to substitute counsel. When exactly this motion occurred is unclear from the record, but it appears to have taken place after Petitioner accepted his plea bargain. When asked for an assurance by the trial court that Baker would zealously represent Petitioner even though such representation might involve allegations of incompetence against some of Baker's coworkers in the Public Defender's Office, Baker offered the somewhat ambiguous, "To the extent I can."

That one public defender should replace another is unremarkable. In some jurisdictions, particular public defenders are appointed in an effort to eliminate conflicts of interest, *see*, *e.g.*, *Woods v. Anderson*, 302 F. Supp. 2d 915, 942 (S.D. Ind. 2004) (observing that when a defendant is represented by the Indiana Public Defender on direct appeal, "special state public defenders" are appointed to represent the defendant in his actions for post-conviction relief). It is unclear from the record whether or not Baker was "walled off" from his other coworkers at the public defender's office so as to be completely free from potential conflicts of interest. Regardless of the presence or absence of this precaution, the Seventh Circuit has held that even in instances where a defendant's current attorney is the law partner of the defendant's former attorney, raising "the potential for a conflict of interest," defendant bears the burden of showing specifically how the alleged conflict of interest compromised his representation. *Gray-Bey v. United States*, 156 F.3d 733, 740 (7th Cir. 1998). Petitioner has not made any such showing here.

2

aggravated robbery due to his criminal history were unconstitutional in light of the then-recent Supreme Court decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Because, as a motion for reduction of sentence, Petitioner's motion would have been untimely, the circuit court opted to treat it as a petition for a writ of habeas corpus under 735 ILCS 5/10-101 *et. seq.* and on April 3, 2001, dismissed the petition without prejudice for failure to serve the correct party.

Petitioner then took a consolidated appeal of both postconviction motions to the Illinois Appellate Court. The six issues Petitioner raised in that consolidated appeal are identical to the issues raised by Petitioner to this court. He contends:

1. Petitioner's untimely motion for reduction of sentence should have been treated as a petition for postconviction relief rather than a petition for a writ of habeas corpus as a matter of Illinois law.

2. Petitioner's motion for postconviction relief should not have been summarily dismissed prior to the appointment of counsel because the Illinois statute allowing for such dismissals violates the single-subject rule of the Illinois constitution.

3. The trial court denied Petitioner due process by failing to advise him that he faced an enhanced sentence because of his criminal record.

4. Petitioner was not eligible for an enhanced sentence had he gone to trial because the indictment was defective and void for vagueness as to the element of recidivism.

5. Petitioner's sentence violates the rule in *Apprendi*.

6. Petitioner is entitled to receive twenty-two days credit toward his sentence for pretrial custody because his *mittimus* was improperly dated August 16, 1999, rather than July 22, 1999, the date on which he was sentenced.

3

The Illinois Appellate Court rejected each of these arguments in an unreported opinion. *People v. Nitz*, 332 Ill. App. 3d 1143, 835 N.E.2d 997 (Table, text not available) (2d Dist. Aug. 7, 2002) (hereinafter, "*Nitz*").³ The court explained that Petitioner's claim with respect to the proper treatment of his motion for reduction of sentence was premature because the circuit court had dismissed it without prejudice and therefore judgment was not yet final. *Nitz*, at 3–4. The court addressed Petitioner's second claim by simply citing another appellate court's conclusion that the Illinois law allowing for pre-counsel, summary dismissal of a motion for postconviction relief does not violate the single-subject rule of the Illinois Constitution. *Id.* at 5–6 (citing *People v. Vilces*, 321 Ill. App. 3d 937, 943-45, 748 N.E.2d 1219, 1224-27 (2d Dist. 2001)). With respect to the third claim, the court noted that Petitioner's voluntary guilty plea operates as a waiver of all nonjurisdictional defects, *Nitz*, at 4 (citing *People v. Peeples*, 155 Ill. 2d 422, 491, 616 N.E.2d 294, 326-27 (1993)), and that, in any event, the state was not required to give the defendant notice that his prior convictions made him eligible for a Class X sentence, *Nitz*, at 4 (citing *People v. Contreras*, 241 Ill. App. 3d 1023, 1025-26, 609 N.E.2d 949, 950-51 (1st Dist. 1993)).

Petitioner's fourth and fifth claims both relate to the enhanced sentence Petitioner risked in the event of a conviction due to his criminal history. The appellate court addressed those claims together and rejected them on three grounds. First, the court noted that *Apprendi* does not apply retroactively to postconviction proceedings. *Nitz*, at 5 (citing *People v. McGee*, 328 Ill. App. 3d 930, 772 N.E.2d 752 (2d Dist. 2002)). Second, the court pointed out that *Apprendi* itself excludes findings related to prior offenses from its rule. *Nitz*, at 5. Third, the court relied on an Illinois

---

³ The text of the Illinois Appellate Court's decision is available as part of the record related to this petition.

4

Supreme Court ruling that *Apprendi* does not apply to a sentence imposed pursuant to a negotiated guilty plea. *Id.* (citing *Hill v. Cowan*, 202 Ill. 2d 151, 781 N.E.2d 1065 (2002)).

Finally, the appellate court rejected Petitioner's sixth claim on the basis that by the court's calculations, Petitioner had in fact already received the twenty-two day credit from the circuit court. In any event, the court observed, if Petitioner were alleging that the Department of Corrections had made an error in calculating the sentence, then the issue is not properly raised on a motion for postconviction relief and must instead be raised in a separate civil action against the Department of Corrections. *Nitz*, at 6–7 (citing *Guzzo v. Snyder*, 326 Ill. App. 3d 1058, 762 N.E.2d 663 (3d Dist. 2002); *McGee v. Snyder*, 326 Ill. App. 3d 343, 760 N.E.2d 982 (2d Dist. 2001)).

Petitioner raised all the same arguments in his petition for leave to appeal, but the Illinois Supreme Court denied that petition on December 5, 2002. On March 10, 2003, Petitioner filed this request for federal habeas relief,[4] raising the same six claims presented to the Illinois Appellate Court. This court discusses Petitioner's claims in the same order.

## DISCUSSION

1. **Claims One and Two**

In Claim One, Petitioner asserts that the circuit court erred in interpreting his untimely motion for reduction of sentence as a petition for habeas relief, and in Claim Two, Petitioner asserts that the law allowing for pre-counseled dismissal of state postconviction motions runs afoul of the Illinois Constitution. In regards to these two claims, Petitioner is without recourse before this court.

---

[4] Petitioner Nitz had previously filed a petition for writ of habeas corpus in this court on October 3, 2001. Because Petitioner had yet to exhaust his available state remedies at that time, this court dismissed the petition without prejudice on February 20, 2002.

5

Although Petitioner raises both state and federal claims in the instant petition, this court may only entertain the latter. 28 U.S.C. § 2254(a). As the Seventh Circuit recently reiterated, "[a] federal court may grant habeas relief only if the petitioner demonstrates that he is in custody 'in violation of the Constitution or laws . . . of the United States.'" *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004) (quoting 28 U.S.C. § 2254(a)).

The Seventh Circuit recognized in *Barger v. Indiana* that "[s]tate courts are the final arbiters of state law." 991 F.2d 394, 396 (7th Cir.1993) (affirming that a claim that a state court erroneously interpreted a state law is not cognizable in a federal habeas action). For this reason, this court will dismiss Petitioner's first two claims without further comment. The question of whether or not a state court should have treated an untimely motion for the reduction of sentence as one kind of state court motion rather than another does not raise any question of federal law, nor does the question of whether or not a state statute violates the Illinois Constitution. Both claims are solely matters of state law and as such are not cognizable as part of a federal habeas action.

2.  **Claims Three, Four, and Five**

In Claims Three, Four, and Five, Petitioner raises due process challenges to the ten-year sentence he is serving. Although these claims are founded on federal law, they fail for a different reason: the state court dismissed them on adequate and independent state law grounds. This court may not consider any claim resolved by the state court on adequate and independent state law grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *Aliwoli v. Gilmore*,

127 F.3d 632, 634 (7th Cir 1997) (affirming denial of a § 2254 petition because the state court decision was based on adequate and independent state grounds).

As established in *Wainwright v. Sykes*, when state substantive or procedural law is dispositive of a case, a federal court will not address the federal issues in a habeas petition. 433 U.S. 72, 81-82, 86–87 (1977). The Court made clear in *Bousley v. United States* that state law concerning rights waived by entry of a negotiated guilty plea falls within the category of state procedural rules sufficient to bar consideration of federal claims otherwise cognizable in § 2254 proceedings. 523 U.S. 614, 622 (1998). Petitioner here pleaded guilty to just one of the six counts with which he was charged in exchange for the dismissal of the remaining five. He received an agreed and certain ten-year sentence rather than face the uncertain prospects of a potentially more severe sentence at trial. Under Illinois law, as the Illinois Appellate Court explained in ruling on Petitioner's consolidated appeal, a voluntary guilty plea waives all nonjurisdictional errors. *Nitz*, at 4 (citing *Peeples*, 155 Ill. 2d at 491, 616 N.E.2d at 326-27). The *Peeples* rule identified by the state appellate court remains good law. *See, e.g., People v. Townsell*, 209 Ill. 2d 543, 545, 809 N.E.2d 103, 104 (2004) ("It is well established that a voluntary guilty plea waives all non-jurisdictional errors or irregularities, including constitutional ones.").

Petitioner's third claim is that the trial court's interpretation of Illinois law left him without fair notice of the sentence he might have received, had he decided not to take the state's plea deal. Under *Peeples*, this error, if any, is a nonjurisdictional one that was waived by the entry of a guilty plea in state court. The Seventh Circuit has reiterated that when a federal court reviews a state criminal sentence on habeas, "[i]f a claim is found to be waived by an Illinois appellate court, that constitutes an independent and adequate state ground and [the court] will not entertain that claim."

7

*Aliwoli*, 127 F.3d at 634 (finding that by failing to preserve an objection to improper statements made by the prosecution to the jury, defendant was procedurally barred from raising that objection in federal court). The *Peeples* rule identified by the Illinois Appellate Court provides an adequate and independent ground for dismissing the Petitioner's third claim regardless of this court's determination of the substantive federal law issue in question.[5]

A similar logic explains this court's rejection of Petitioner's fourth and fifth claims–that the indictment was defective and void for vagueness with respect to recidivism and that Petitioner's sentence violated *Apprendi*.[6] The state appellate court relied on *Hill v. Cowan* for the proposition that a guilty plea operates as a waiver of all *Apprendi*-based claims. *Nitz*, at 5 (citing 202 Ill. 2d 151, 781 N.E.2d 1065).[7] *Hill* remains good law in Illinois, see, e.g., *People v. Dyches*, 355 Ill. App. 3d 225, 229-230, 824 N.E.2d 636, 639 (1st Dist. 2005) ("Our supreme court has held that a guilty plea

---

[5] The Illinois Appellate Court ruled in the alternative that even if the issue had not been waived by petitioner's guilty plea, on the merits, he was without recourse. As a matter of state law, the prosecution was not required to give the defendant notice that his prior convictions made him eligible for a Class X sentence. *Nitz*, at 4 (citing *People v. Contreras*, 241 Ill. App. 3d 1023, 1025-26, 609 N.E.2d 949, 950-51 (1st Dist. 1993)); see also *People v. Glenn*, 267 Ill. App. 3d 229, 230, 640 N.E.2d 957 (2d Dist. 1994) (following *Contreras* to hold that the charging instrument need not notify a defendant of the state's intention to seek an enhanced sentence where prior convictions increase only the sentence of the offense and not its classification). Because the appellate court's procedural holding requires dismissal of the claim, the court need not weigh in on the merits of the substantive holding.

[6] Or more accurately, the sentence Petitioner faced, had he not agreed to the plea deal, *would have* violated *Apprendi*.

[7] Again, this court offers no opinion concerning the state court's resolution of these claims on the merits. See *Prihoda v. McCaughtery*, 910 F.2d 1379, 1383–84 (7th Cir. 1990) ("[T]he federal court must respect the procedural basis, so long as the state court says that each ground is sufficient.").

waives any *Apprendi*-based claims."). Without more, Petitioner's federal claims are barred by a state decision based on adequate and independent grounds.

Petitioner would still be entitled to raise his three federal due process claims if he could show either cause and prejudice for the default of Claims Three, Four, and Five, *Wainwright*, 433 U.S. at 87, or that he is actually innocent, *Bousley*, 523 U.S. at 622. Petitioner does not allege cause and prejudice.[8] He does assert that he is "actually innocent" of the prior convictions upon which, had he gone to trial, he might have received a Class X felony enhancement, but he alleges only legal innocence. A petitioner is required to allege factual innocence to avail himself of the benefits of the miscarriage of justice exception to the procedural default rule in this context. *See Boyer v. United States*, 55 F.3d 296, 300 (7th Cir. 1995) ("[C]laims of legal innocence rather than claims of actual innocence have no relevance in the miscarriage of justice context.").[9] Here in Claim Four, Petitioner

---

[8]  It should be noted that although Petitioner does not present the arguments to this court, Petitioner did allege that his counsel was ineffective in his motion for reduction of sentence presented to the state circuit court. In some instances, the incompetence of counsel has been shown to satisfy the requirements of cause and prejudice, *see, e.g., Murray v. Carrier*, 477 U.S. 478, 488-489 (1986), but to avail himself of this avenue petitioner must ensure that the ineffective assistance of counsel claim itself has not been procedurally defaulted upon or is itself excused by its own cause and prejudice. *Edwards v. Carpenter*, 529 U.S. 446 (2000).

[9]  Legal innocence is not a claim that the accused did not in fact commit the crime, but rather only that he or she could not be convicted of the crime because, for example, the only evidence available to prove the prosecution's case was obtained illegally. Factual innocence is the claim that the accused did not commit the crime of which he or she is accused at all. For example, in *Boyer v. United States*, the Seventh Circuit wrote off as a claim of only legal innocence a petitioner's argument that he could not be considered a career offender because the Sentencing Commission lacked the authority to designate a certain type of offense *that he had committed* as a predicate for career offender status. 55 F.3d 296, 300 (7th Cir. 1995). On the other hand, the Fourth Circuit credited as a claim of factual innocence a petitioner's argument that he could not be considered a career offender because he had only one relevant felony conviction instead of the necessary two. *Id.* (citing *United States v. Maybeck*, 23 F.3d 888, 892 (4th Cir. 1994)).

9

alleges only that the indictment was defective because it failed to mention Petitioner's prior Class 1 and 2 felony convictions. Notably, Petitioner does not allege that he did not in fact commit the offenses upon which his prior felony convictions are based or offer any other similar line of argumentation which would suggest factual innocence.

More significantly, Petitioner has not asserted that he is actually innocent of the aggravated robbery charge to which he pleaded guilty. In *Bousley*, the Supreme Court granted a hearing on the question of actual innocence in spite of petitioner's failure to raise it in his habeas petition. 523 U.S. at 623. Although *Bousley* suggests Petitioner might be entitled to a hearing in spite of his failure to request one before this court, that case also sets out a standard for prevailing at such a hearing which Petitioner is unable to surmount. Specifically, to prove actual innocence such that a procedural default could be forgiven in a habeas petition, the petitioner bears the burden of showing that "in light of all the evidence," *id.*, "it is more likely than not that no reasonable juror would have convicted him," *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Petitioner's statement of facts in his brief in support of his consolidated appeal to the state appellate court states, "[D]efendant pled guilty to one count of aggravated robbery [ ]. The factual basis tended to show that the defendant approached Edit Fogaresi, after having been inside the flower shop where she worked, claimed he had a gun and told her to give him her money or he would shoot her. Forgaresi gave the defendant . . . her purse." Brief for Defendant-Appellant at 5, *Nitz*. These facts, presented by the Petitioner, provide a reasonable basis for the belief that the Petitioner is factually guilty of the charged conduct. Given the Petitioner's own characterization of the factual basis for his guilty plea, it is unnecessary to remand to determine that a jury could reasonably have voted for his conviction. *See Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("'[I]n virtually every

10

case, the allegation of actual innocence has been summarily rejected.'") (quoting *Schulp*, 513 U.S. at 324).

C.  Claim Six

Finally, the court turns to Petitioner's request for a twenty-two day sentencing credit. The state appellate court seemed uncertain as to whether the claimed error was made by the trial court in drafting the sentencing order or by the Illinois Department of Corrections in calculating the sentence based on that order. Unfortunately, because the request itself is so unclear, this court is similarly puzzled. Petitioner has invoked no federal basis for this claim, and this court is therefore not obliged to address it at all. In an effort to clarify the apparent confusion, however, the court offers the following: It appears that Petitioner was detained from January 20, 1999, until to July 22, 1999, when he entered the plea at issue, a total of 184 days of pretrial detention. The Petitioner believes that this is the appropriate length of the pretrial sentencing credit, and it appears that the circuit court reached the same conclusion. *People v. Nitz*, 99-CF–108, order (Cir. Ct. Jul. 7, 1999) ("Defendant sentenced to 10 (Ten) years Illinois Department of Corrections with credit for 184 days already actually served."). If all Petitioner hopes to achieve in bringing this claim is an order stating that his ten-year sentence began on July 22, 1999, and that with 184 days of pretrial credit, he had but nine years and 181 days left to serve on that date, then Petitioner has already received this relief; that is exactly what the circuit court gave him.

Petitioner also asserts, however, that "through mistake or inadvertence his sentence was calculated from 8-16-1999 and not from 7-22-1999," and as such he has been deprived of twenty-two days of pretrial custody credit. There are twenty-five days between July 22, 1999, and August 16,

11

1999 (and this period is technically post-trial).[10] While the Petitioner does not actually offer any details as to *whose* inadvertence is at issue, Petitioner appears to believe, based on the admittedly skimpy averments, that rather than beginning to count the nine years and 181 days of the Petitioner's post-trial sentence that remained to be served on July 22, 1999, the Illinois Department of Corrections or perhaps the warden at the facility where Petitioner is being detained began counting on August 16, 1999. Such an error might have occurred because on the line in the circuit court's preprinted sentencing form that ordinarily reads "Sentence stayed until," the word "sentence" has been crossed out and "transport" is handwritten in. This alteration may have reflected an intention to delay Petitioner's transport from the DuPage County Jail for twenty-five days after his plea. *Id.* It is possible that someone reading the order might have missed the line-out and believed that Petitioner's sentence itself was stayed until August 16, 1999, with the result that the period from July 22, 1999, to August 16, 1999, may not have been counted towards the nine years and 181 days remaining in the Petitioner's sentence.[11]

If that is the case, Petitioner is advised to file a state mandamus action with a clear statement identifying the evidence upon which he believes that his sentence has been miscalculated. Alternatively, this situation might also be resolved by a letter to the IDOC officials responsible for ensuring that the actual length of the Petitioner's incarceration corresponds exactly to the order from

---

[10] The record does not offer any explanation for the discrepancy between the twenty-two days Petitioner calculates and the twenty-five days calculated by this court.

[11] Such an oversight is quite possible for a less than absolutely attentive reader. Indeed the Petitioner himself, presumably the party most interested in giving the sentencing order a close read, in his opening brief to this court stated that the trial judge had stayed his sentence until August 16, 1999, only later correcting himself in his reply brief.

12

the court upon which his incarceration rests. As it stands, however, this court cannot reach the merits of this claim in a § 2254 proceeding without an assertion of a violation of federal law or the US Constitution.

Mr. Nitz's petition for a writ of habeas corpus is denied.

ENTER:

Dated: January 4, 2006

REBECCA R. PALLMEYER
United States District Judge